UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| **LATASHA RADNEY-MAXWELL,** *Individually and as Next Friend of* **MAKENZI MAXWELL,** *a Minor*,<br><br>                Plaintiffs,<br><br>    vs.<br><br>**MENARD, INC.,** *a Foreign Profit Corporation*,<br><br>                Defendant. | 2:21-CV-11851-TGB-KGA<br><br><br>**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br>**(ECF NO. 22)** |

    Latasha Radney-Maxwell sued Menard, Inc. after her daughter slipped and fell in one of its stores. Menard has moved for summary judgment. For the reasons that follow, the motion will be **GRANTED.**

**I.     Background**

    On August 19, 2018, Brandon Maxwell met his friend, Shonee McNair, at a Menard's store to help her pick out flooring for a home-remodeling project.[1] Maxwell Dep. 7:18-8:15, ECF No. 22-3, PageID.190-91. Maxwell's four-year-old daughter, Makenzi, accompanied him. *Id.* at

---

[1] During their depositions, neither Maxwell nor McNair could recall with any certainty the date or even the year of the incident. (*See* Maxwell Dep. 8:18, PageID.192 ("What was this, 2014? 2016, I'm sorry, correct?"); McNair Dep. 5:3, PageID.251 ("It wasn't 2018. You have the wrong date. … Maybe 2020.").) No incident reports or medical records reflecting a date of injury are part of the record. But Menard has not raised a statute-of-limitations defense, and the parties appear to agree for purposes of this motion that August 19, 2018 is the correct date.

1

9:12-21, 18:21-25, PageID.192, 201. The two trailed after McNair in the store as she shopped around. *Id.* at 24:2-8, PageID.207.

Makenzi slipped on a piece of paper as the group browsed in the ceramic tile aisle. *Id.* at 26:16-27:25, PageID.209-10. Maxwell and McNair have slightly differing recollections of the incident. According to Maxwell, Makenzi was walking "maybe a half a step" behind him and fell while he and McNair were turned away from her. *Id.* at 27:12-29:23, PageID.210-12. McNair, meanwhile, remembers facing Makenzi from about fifteen feet away and seeing her fall backwards and hit her head as she wandered around the aisle commenting about how pretty the tiles were. McNair Dep. 7:23-8:17, 11:19-13:22, ECF No. 22-4, PageID.252-53.

Neither Maxwell nor McNair saw paper on the ground or knew how long it had been there before Makenzi fell. Maxwell Dep. 32:2-11, 41:12-19, PageID.215, 224; McNair Dep. 11:15-12:9, 17:10-17, PageID.253-54. Retrospectively, McNair recalls "see[ing] something on the floor" that looked like "it was part of the floor … but apparently it wasn't;" Maxwell remembers that it "kind of blended with the floor." McNair Dep. 8:18-9:3, PageID.252; Maxwell Dep. 32:3-11, PageID.215. Maxwell remembers only one "almost clear" piece of paper, while McNair recalls "at least three" white, 12" x 12" papers, of the type used to separate ceramic tiles, coated in slick wax. Maxwell Dep. 32:21-33:22, PageID.215-16, McNair Dep. 15:11-16:17, PageID.254.

2

Maxwell scooped Makenzi up while McNair became "kind of hysterical," walked over, picked up the paper, balled it up, and put it on a shelf. Maxwell Dep. 32:15-20, PageID.215. Makenzi was dazed, staring blankly, and not responsive. *Id.* at 36:9-20, PageID.219. An employee who was helping a customer at a nearby kiosk yelled out, "Oh, shoot, she fell!" but did not assist. *Id.* at 31:14-18, PageID.214. Maxwell testifies that he rushed Makenzi to the customer service desk, where he got an icepack and filled out an incident report, then headed to urgent care. *Id.* at 37:14-40:20, PageID.220-23. In the flurry of events, nobody took photos of the aisle or the paper on which Makenzi slipped. *Id.* at 34:12-23, PageID.217. The incident report has not been made a part of the record.

Three years later, in 2021, Makenzi's mother, Latasha Radney-Maxwell, sued Menard in Wayne County Circuit Court on Makenzi's behalf, asserting claims for negligence and premises liability.[2] (ECF No. 1-2.) She alleged that Makenzi was suffering ongoing complications, including cognitive and neurological deficits, headaches, and a decrease

---

[2] Radney-Maxwell did not number the claims in her complaint. Her pleading makes a passing reference to a potential statutory claim under MCL § 554.139, which concerns the implied warranty of habitability for a residential premises. (ECF No. 1-2, PageID.14.) The parties do not discuss this claim in their briefs. The Court will construe its inclusion in the complaint as a scrivener's error. There is no dispute that the incident occurred on commercial, not residential, premises, so MCL § 554.139 is not applicable.

3

in her motor skills. Radney-Maxwell is a Michigan resident and Menard is not, so Menard chose to remove the case to federal court. (ECF No. 1.)

Menard now moves for summary judgment.

## II. Legal Standard

A party is entitled to summary judgment if it "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). No genuine material factual dispute exists if "the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

At summary judgment, the Court construes the evidence in the light most favorable to the nonmoving party and draws all reasonable inferences in her favor. *Id.* The nonmoving party's evidence need not be in an admissible form. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). But she must "show that she *can* make good on the promise of the pleadings by laying out enough evidence that *will be* admissible at trial to demonstrate that a genuine issue on a material fact exists." *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009).

## III. Analysis

The parties agree that Radney-Maxwell's claims are governed by Michigan law. *Guthre v. Lowe's Home Ctrs., Inc.*, 204 F. App'x 524, 525 (6th Cir. 2006).

### A. Ordinary Negligence

As a preliminary matter, Menard argues that it cannot be held liable for ordinary negligence as a matter of law because, notwithstanding the labels attached to Radney-Maxwell's claims, the gravamen of her allegations is that her daughter was injured by a dangerous condition on its premises. (ECF No. 22, PageID.175-76.)

Michigan law distinguishes between claims arising from ordinary negligence and claims premised on conditions of land. *Buhalis v. Trinity Continuing Care Servs.*, 822 N.W.2d 254, 258 (Mich App. 2012). A claim for ordinary negligence is "based on the underlying premise that a person has a duty to conform his or her conduct to an applicable standard of care when undertaking an activity." *Jeffrey-Moise v. Williamsburg Towne Houses Coop., Inc.*, 971 N.W.2d 716, 723 (Mich. App. 2021). A premises liability claim, meanwhile, arises solely from a defendant's duty as an owner or occupier of a premises. *Buhalis*, 822 N.W.3d at 258.

Radney-Maxwell responds that a claim for premises liability does not preclude a separate, independent claim for ordinary negligence. (ECF No. 25, PageID.373.) She highlights her allegations that her daughter's injuries do not stem solely from a condition on Menard's premises, but also from an employee's negligence in "placing a display with loose paper … where the paper was likely to end up on the floor and cause a hazard." (ECF No. 25, PageID.377.)

5

Radney-Maxwell is correct that, under certain circumstances, a plaintiff may maintain claims for both ordinary negligence and premises liability. In *Pernell v. Suburban Motors Co., Inc.*, 2013 WL 1748573, at *5 (Mich. App. Apr. 23, 2013), for example, the Michigan Court of Appeals recognized that, in addition to a premises liability claim based on puddles on the floor of an auto dealership, the plaintiff could maintain a separate claim for ordinary negligence based on allegations that a defendant-employee had carelessly escorted her across the service bay where there were potentially dangerous accumulations of fluids. And in *Sundberg v. Oberstar, Inc.*, 2020 WL 6685075, at *4 (Mich. App. Nov. 12, 2020), the court similarly held that, in addition to a premises liability claim based on the plaintiff's fall through a significant (over 7 feet) drop-off in an unlit room in an office building, the plaintiff had an independent claim for ordinary negligence based on allegations that an employee pointed her in the direction of the drop-off when she asked where the bathroom was and then failed to intercede when he saw her headed toward it.

But as the court explained in *Sundberg*, the key question is whether Makenzi's injury is tied to some conduct by an employee in addition to the existence of a hazard on its premises. *Id.* Simply "alleging that [the] defendant created the condition does not 'transform the claim into one for ordinary negligence.'" *Jahnke v. Allen*, 865 N.W.2d 49, 51-52 (Mich. App. 2014) (quoting *Buhalis*, 822 N.W.2d at 254). A review of the complaint and summary judgment record shows that Radney-Maxwell's claim

6

concerns an injury occurring because of a condition on Menard's premises—*i.e.*, a poorly stacked shelf leading to papers falling on the floor, creating a tripping hazard. There are no allegations or evidence of any additional conduct by a Menard employee, such as bumping into Makenzi or leading her towards the hazard, that would give rise to a claim for ordinary negligence. And Radney-Maxwell has not raised any claims relating to Menard's response to the incident—for instance, a claim that the employee who saw the fall breached some sort of duty of care by failing to assist in the aftermath. Radney-Maxwell's claim is thus a common-law premises liability claim.

### B. Premises Liability

Menard contends that it is entitled to summary judgment because the record contains no evidence showing that it knew or should have known that there was a hazardous condition in its store. (ECF No. 22, PageID.175-76.)

A storekeeper must "provide reasonably safe aisles for the customers." *Guthre*, 204 F. App'x at 526 (internal quotations omitted). To establish a premises liability claim, a plaintiff needs evidence that an unsafe condition was "known to the storekeeper or [was] of such a character or has existed a sufficient length of time that he should have had knowledge of it." *Id.* Put another way, a plaintiff needs evidence that a storekeeper-defendant had actual or constructive notice of a hazard.

7

Radney-Maxwell appears to concede she has no evidence that Menard actually knew there was a tripping hazard in the ceramic tile aisle. But, she argues, Menard had an affirmative duty to inspect its premises and eliminate hazards. (ECF No. 25, PageID.372-73.) She asserts that, from Maxwell's testimony that a nearby employee saw Makenzi fall, a reasonable juror could infer that the employee had neglected this duty. She further asserts that, from McNair's testimony that there were "several" pieces of paper on the floor, a juror could infer that the hazard was obvious enough that a reasonably careful employee should have seen it and therefore known about it. (*Id.*)

Radney-Maxwell's problem, however, is that she has no evidence of how long the paper (or papers) was (or were) on the floor. While it is not necessary for a plaintiff to have personal knowledge of how long a hazard existed, there must at least be some affirmative evidence suggesting that it existed for more than mere seconds. *Guthre*, 204 F. App'x at *4. The employee who allegedly witnessed the accident has not been identified, and there is no testimony about how long she was in the area or whether she saw the paper. The only evidence supporting Radney-Maxwell's claim is Maxwell and McNair's testimony. Both walked past the paper without incident and without seeing it. And both admit that they do not know how long the paper was on the floor and that they did not see it until *after* Makenzi fell. Indeed, Maxwell testified at his deposition that, "If it had

8

been there two hours or ten minutes, no, I can't answer that." Maxwell Dep. 41:12-19, ECF No. 22-3, PageID.224.

To be sure, Menard was under an affirmative duty to inspect its premises. But the Michigan Supreme Court has made clear that a defendant need not provide "proof of reasonable inspection" to avoid liability in a slip-and-fall case. *Lowrey v. LMPS & LMPJ, Inc.*, 890 N.W.2d 344, 349 (Mich. 2016). Instead, the burden is on the plaintiff to show that a hazard was "of such a character, or had existed for a sufficient time, that a reasonable premises possessor would have discovered it." *Id.* at 350. Here, there is no evidence suggesting that the condition of the paper or the aisle would support an inference of neglect— *e.g.*, footprints on the paper or dust on the floor. *See Guthre*, 204 F. App'x at 527 (no inference of constructive notice possible where plaintiff admitted she did not know how long sand was on floor before she slipped and had no evidence of footprints or cart lines to show sand was spread through store by somebody other than her); *cf. Clark v. Kmart*, 634 N.W.2d 347, 349 (Mich. 2001) (jurors could infer from testimony about timing of lane closure that grapes were on floor for at least one hour before plaintiff slipped on them); *Shiemke v. Target Corp.*, 2014 WL 7204971, at *6 (E.D. Mich. Dec. 17, 2014) (jurors could infer from the fact that puddle on which plaintiff slipped was partially dried up that it had been there for longer than a few minutes). A juror would be left to speculate as to when the paper fell to the floor to determine whether

9

Menard employees should have known about it. Such speculation is not permitted under Michigan law. *Guthre*, 204 F. App'x at 527.

Radney-Maxwell suggests that the manner in which items were stacked on the shelf in the ceramic tile aisle created an intolerable risk that loose papers would fall and create a tripping hazard. But she has presented no evidence of the condition of the aisle or its shelves. McNair and Maxwell did not describe either during their depositions. In response to a compound question asking both whether he *saw* pieces of paper between the tiles on the shelf and whether he *knew* whether such papers were there, Maxwell responded, "Yes." Maxwell Dep. 33:9-19, ECF No. 22-3, PageID.216. The only evidence of what the aisle looked like is a photograph of submitted by Menard, taken at an unknown date. Def's Ex. A, ECF No. 22-2, PageID.182. This photograph depicts boxes of tiles neatly stacked on the shelves. There are no loose papers. There is a portion of one visible sheet of paper sticking out from the top of one of the boxes. Whether this paper was jostled out of place by a customer who opened the box to inspect tiles or for some other reason, it is not evidence of a hazard that would have alerted the owner of the premises. There is nothing evident in the arrangement of the boxes or shelves that suggests Menard should have known there was a risk of loose papers falling to the floor. As McNair speculated about the papers during her deposition, "somebody [must have] pulled them off the shelf and threw them on the floor, apparently." McNair Dep. 15:21-16:2, ECF No. 22-4, PageID.254.

But there is no evidence showing when this may have happened, or whether the paper was there for a long enough period of time for Menard to be placed on notice of its presence.

Radney-Maxwell has failed to present any evidence that Menard knew or should have known there was a tripping hazard in the aisle, and she therefore cannot establish a case for premises liability.

## IV. CONCLUSION

Menard's Motion for Summary Judgment is **GRANTED**, and this case will be **DISMISSED** in its entirety with prejudice.

**IT IS SO ORDERED**, this 19th day of January, 2023.

BY THE COURT:

/s/Terrence G. Berg
TERRENCE G. BERG
United States District Judge